## SCHLEGEL et al. v. KINZIE.

No. 20534. Opinion Filed March 29, 1932.

Rehearing Denied June 21, 1932.

W. P. Nelson, for plaintiffs in error.

Leahy, Maxey, MacDonald & Holden, for defendant in error.

ANDREWS, J. This is an appeal from a judgment of the district court of Tulsa county in favor of the defendant in error, the plaintiff in the trial court, against the plaintiffs in error, the defendants in the trial court. Hereinafter the parties will be referred to as plaintiff and defendants.

The prayer of the plaintiff's petition was for a mandatory injunction commanding the defendants to bury the pipe lines and to remove the pipe, structures, trash, and odds and ends not necessary to the production of oil and gas on the property in controversy; for judgment for the amount of rent collected on a pumper's house located on the property, and for judgment for the amount of loss sustained by the plaintiff in not being able to rent out the property. Judgment was for the plaintiff as to the prayer for a mandatory injunction and against the plaintiff as to the prayer for rentals and damages. The plaintiff did not appeal. Hereinafter the discussion will be confined to the question of mandatory injunction as presented on the appeal by the defendant.

It appears from the record that the plain-

tiff is the owner of the real estate involved in the action; that it consists of 20 acres of land lying adjacent to the city of Tulsa; that at the time the plaintiff purchased it, and at all times since, it has been subject to an oil and gas mining lease which included other lands; that there were two oil wells producing about one barrel each a day on the land; that the shackle lines pumping the wells were above the ground; that the pipe lines for carrying the oil were on top of the ground; that a drilling machine supported by guy lines has been left standing on the land; that an oil boiler, wheels, iron, trash, and refuse had been left on the land; that the slush pit had not been filled and contained stagnant water; that casing was stacked in various places on the premises; that around the pumper's house old wagons, furniture, and other unsightly odds and ends had been left; that shackle lines extended across the plaintiff's property for the purpose of pumping wells on other property covered by the oil lease; that by reason of the condition of the property the plaintiff was unable to rent or sell the property; that the plaintiff had requested the defendants to clean up the property, and that the defendants had refused to do so.

The defense consisted of the contention that the defendants had an oral contract with a prior owner of the land whereby they were permitted to maintain the pipe lines and shackles as they were, and that their occupation of the premises was not in an unreasonable or unnecessary manner. To this defense the plaintiff replied by denying notice of the parol contract relied upon by the defendants. The defendants herein contend that the court erred in finding that their use of the property was unreasonable and unnecessary. There is thereby presented a question of fact. From an examination of the record, we are unable to say that the judgment of the trial court is against the clear weight of the evidence. Under the provisions of the oil and gas mining lease held by the defendants, the defendants were not entitled to the exclusive possession of the real estate but only to possession thereof concurrent with the owner thereof. They had a right to possess so much of the surface as was reasonably necessary for the operation of the property for oil and gas.

"Upon the grant or reservation of the mineral rights in land, even in the absence of an express provision, the owner of the mining right is entitled, as an appurtenant to such grant or reservation, to the use of the surface to the extent reasonably necessary to extract and remove the minerals." Mills Oil and Gas Law, section 161, pages 250-251.

In Pulaski Oil Co. v. Conner, 62 Okla. 211, 162 P. 464, this court held:

"In the absence of contrary expressions in the lease, a lessee in an oil and gas lease has only such rights to the surface of the leased land as may be necessarily incident to the exercise of his rights under the lease, and must protect the surface rights in so far as such incident necessity does not exist."

In Rennie v. Red Star Oil Co., 78 Okla. 208, 190 P. 391, this court considered the proposition of possession of premises leased for oil and gas purposes, and said:

"In considering this contention, we should inquire as to the rights of the lessee under the terms of the lease. Under an oil and gas lease, the possession of the leased premises by the lessor and lessee is what might be termed a concurrent possession; that is to say, the lessee is entitled to enter upon the land leased and entitled to the possession of such parts and portions thereof as are necessary for developing the premises for oil and gas under the terms of the lease and to do the things necessary to make the operation successful."

The record shows that the oil and gas lease contained, among other provisions, the following:

"When requested by lessor the lessee shall bury its pipe lines below plow depth and place shackle lines on ground where at all possible."

The only evidence in support of the contention that the parol contract varied the terms of the written contract was that of the defendant Schlegel, who, in speaking of the former owner of the land, said:

"I, or we,—I don't know whether Mr. Shreve was in with us at that particular time, but we employed him, and after I hired him, there was new deal made in reference to laying the lines, because we wanted to get to developing the open field, at which time I raised his wages and told him that he should build the shackle lines and the pipe lines where he would wish them, because he was farming. He was farming some of it in hay, and some of it trucking, and some of it general farming."

The court did not find from the evidence that such an oral agreement existed, and expressed doubt as to the same, saying, "and the oral agreement, if any, made by them with Mr. Mills is not binding upon the plaintiff herein."

Section 5081, C. O. S. 1921, provides as follows:

"A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

In Levin v. Hunt, 70 Okla. 63, 172 P. 940, this court, interpreting that section, held:

"While, under section 988, Rev. Laws 1910, the parties to a written contract cannot alter the same by parol, they may, independent of the statute, rescind the written contract by parol and substitute therefor a new parol contract; said section has no application to the new contract"

—and said:

"While under the above-quoted statute, it is plain that the parties to a written contract cannot alter the same by parol agreement, it is well settled that they may, by parol, rescind, discharge, or terminate a written contract, or may enter into a new contract as a substitute for the old."

With reference to the acknowledgment and the recording of instruments pertaining to real estate, section 5251, C. O. S. 1921, provides as follows:

"Except as hereinafter provided, no acknowledgment or recording shall be necessary to the validity of any deed, mortgage or contract relating to real estate as between the parties thereto; but no deed, mortgage, contract, bond, lease or other instrument relating to real estate other than a lease for a period not exceeding one year and accompanied by actual possession, shall be valid as against third persons unless acknowledged and recorded as herein provided."

The defendants contend that their open and notorious possession of the premises was notice to the plaintiff of such interest as they might have, regardless of the record, and that a person seeking to acquire an interest in the property was bound to go further than a mere examination of the record and to ascertain the claims of those in possession. They cite authorities to sustain the contention that, where a tenant is in open and exclusive possession of real estate at the time it is sold by his landlord, the purchaser is chargeable with notice of all legal and equitable rights of the tenant therein. In the case under consideration, the tenant held under an oil and gas lease. He did not have exclusive possession of the premises but concurrent possession only. The land was being used by the owner, also in possession, for farming and truck raising. The oil and gas lease had been on record for several years before the plaintiff purchased the land or for sometime before her grantor purchased the same. Nothing else appeared on the records of the county that would authorize defendants' possession.

Under the facts in this case, we think the proper rule of notice is that stated in 27 R. C. L., page 723, sec. 487, as follows:

"As a general rule where a person occupies premises, and the record shows a conveyance under which he would be entitled to the possession, his possession will be referred to the record title, and a subsequent purchaser will not be charged by it with notice of any other undisclosed title or equity which the occupant may have. The possession is a matter tending to excite inquiry, but the fact that the occupant has placed upon the public records written evidence of his right, with the terms of which his possession is consistent, arrests inquiry at that point, and reasonably informs the purchaser that he may rest upon the knowledge thus obtained."

The rule is stated in 39 Cyc., page 1753, as follows:

"No one can be deemed to have bought without notice if at the time of the purchase the party in possession has a record title. Consequently if there is a deed upon record running to the person in possession, and apparently sufficient to explain the fact of possession, then the possession may be referred to such deed, and a subsequent purchaser is not affected with notice of any other undisclosed title or interest which the occupant may have."

In Kirby v. Tallmadge, 160 U. S. 379, 40 L. Ed. 463, that court said:

"This case is also a mere application of the rule that if there be any title to the land in one who is in possession of it, the possession will be referred to that title, or, as said in 2 Pomeroy's Equity Jurisdiction, sec. 616: 'Where a title under which the occupant holds has been put upon record, and his possession is consistent with what thus appears of record, it shall not be a constructive notice of any additional or different title or interest to a purchaser who has relied upon the record, but has had no actual notice beyond what is thereby disclosed.'"

The rule is not in conflict with the rule announced in Wilkinson v. Stone, 82 Okla. 296, 200 P. 196, which the defendants cite and rely upon. In that case the holding was to the effect that, where possession was held under a valid instrument which is of record, the purchaser, upon finding such instrument on record, may rest thereon without further inquiry. However, in that case the instrument which the party in possession had on record was void and the court held that it was no notice and that it was the duty of the purchaser to make inquiry of the person in possession.

In Shaffer v. Turner, 43 Okla. 744, 144 P. 366, cited and relied upon by the defendants, the judgment was based on the verdict of a jury which found that the plaintiff therein had actual knowledge of the defendant's claim beyond the lease shown by the record.

We find nothing in the record to warrant a reversal of this cause, and the judgment of the trial court is in all things affirmed.

LESTER, C. J., and RILEY, HEFNER, CULLISON, and SWINDALL, JJ., concur. CLARK, V. C. J., absent. McNEILL, J., disqualified. KORNEGAY, J., dissents.