## WISE et al. v. TABOR.

No. 33044.   May 17, 1949.
Rehearing Denied June 7, 1949.

*206 P. 2d 970.*

Arrington & Miller, of Shawnee, for plaintiffs in error.

John L. Goode and Mark Goode, both of Shawnee, for defendant in error.

ARNOLD, V.C.J.   The Land Office is the owner of the north half of section 16, township 10 north, range 5 west, Pottawatomie county. The Commissioners of the Land Office granted and executed an agricultural lease on the northwest quarter of said section to the defendant in error for a term of five years beginning January 1, 1946. Thereafter and during the term of said agricultural lease the Commissioners of the Land Office executed the lease on the east half of said northwest quarter to the Wise Drilling Company and also ex- ecuted an oil and gas lease on lots 1 and 2 constituting the west half of the northeast quarter of said section to the Wise Drilling Company. Both of these leases were assigned by the Wise Drilling Company to James S. Wise, who in turn assigned an undivided one-half interest in said leases to the Phillips Petroleum Company. The Commissioners then made a written agreement with said lessees permitting joint operation of the two leases. Operations were begun by lessees indicating an intention on their part to store all oil produced from the two tracts of land on the tract covered by the agricultural lease. The agricultural lessee threatened to forcefully prevent the laying of pipe lines then in progress, etc., looking toward the consummation of the purpose stated. Injunction was sought by lessees which was denied by the district court.

It is not denied, but on the contrary conceded, that the oil and gas lessees intend to store the production from both tracts on the land covered by the agricultural lease. They contend that the Commissioners had the authority to authorize such use of said tract of land. The agricultural lessee takes the position that the Commissioners had no such authority in the face of the terms of his agricultural lease, the right to store oil produced from the northeast quarter of the section on the northwest quarter thereof not having been reserved by the Commissioners in the agricultural lease to him and that such use would be in violation of his right to exclusive possession and use of the surface of the northwest quarter subject only to the use of the lessee for necessary storage of oil produced from said quarter.

The Commissioners of the Land Office reserved the oil and gas rights in the land leased by them to defendant for agricultural purposes. All parties agree that the reservation retained the right in the Commissioners to thereafter lease and thereby grant the authority to explore for oil and gas, save, store on, and transport from the prem-

ises oil recovered. Nobody questions the authority of the Commissioners to do that which it is claimed they did do, i.e., reserve the right to thereafter grant the use of the land leased for agricultural purposes to another to store oil produced from a different tract of land owned by the state and controlled by the Commissioners of the Land Office.

The authority and duty of the Commissioners being unquestioned and the preference right lease having been executed and accepted before the questioned consolidation was agreed upon, we have for determination only the simple question of what rights were granted to the preference right lessee and what rights were reserved by the terms of the preference right agreement.

The terms of this lease fixes the rights of the parties thereto. The fact that different and additional rights could have been reserved makes no difference. The parties to the preference right agreement, the terms of which were intentionally dictated by the Commissioners, are bound by the terms thereof. There is no law requiring the Commissioners to reserve the right to store oil produced on a tract of land owned by the state and covered by an oil and gas lease upon another such tract. This matter being entirely optional with the Commissioners of the Land Office, they should be bound by the terms of their preference right lease agreement on the point the same as individuals. There is no reason for the declaration and application of a different rule in this case than that which would be applicable under the same facts between two individuals.

The Commissioners of the Land Office reserved "to the State of Oklahoma, its lessees, or grantees, the right to explore said premises for oil or gas, to drill and operate oil and gas wells on said premises and the easement, use and right of way to enter upon said premises and to fully enjoy the mining right hereby reserved". The state can claim no reservation not required by law or actually retained. Tansel v. Storm, 40 Okla. 363, 138 P. 168.

Though the reservation expressed by the state in the foregoing language does not specifically provide for storing oil on the premises, such reservations have a well-defined meaning and imply this right as to oil produced on the leased land. Pulaski Oil Co. v. Conner, 62 Okla. 211, 162 P. 464; Schlegel et al. v. Kinzie, 158 Okla. 93, 12 P. 2d 223; Magnolia Petroleum Co. v. Howard, 182 Okla. 101, 77 P. 2d 18. The state could have and did grant the right to its oil and gas lessee to store oil produced from the particular tract thereon and use a reasonable portion of the surface thereof for such purpose.

By the terms of the preference right lease the defendant had the exclusive right to the use of the surface of the land covered by his lease, subject only to the rights reserved in the state by the Commissioners of the Land Office and granted to its oil and gas lessee, which was to explore and develop the premises for oil and gas, save and store thereon, and transport oil and gas produced on said land. The state reserved no right to use the surface of the land for the storage of oil produced elsewhere and the attempt of its oil and gas lessee to use the surface of the land in question for a purpose not reserved constitutes a violation of defendant's fixed, exclusive right to full use of the surface of the land covered by his preference right lease, subject only to exact reservations made by the state by the terms of its lease to him.

Though his interest may not be a truly legal or equitable estate, nevertheless, his right to exclusive possession and use of the surface thereof as against all threatened exercise of unreserved rights entitles him to protection of a court of equity because damages will not furnish adequate protection against such trespassing.

The parties agree that this court has not passed on the exact question pre-

sented, though under other circumstances it has, to a limited extent, defined the rights of preference right lessees. The practical effect of the argument of defendant is that the Commissioners of the Land Office and their grantees should be circumscribed by the reservation made by the Commissioners. We agree. The practical effect of the argument of the oil and gas lessees of the Commissioners of the Land Office is that since the Commissioners could have and should have made the reservation contended for by them, we should in the public interest announce and apply a new rule of interpretation, though to do so would have the effect of putting an additional and unanticipated burden on the surface of the land leased to defendant. We do not agree. By the same token, any possible benefit to the state by such holding would be offset by detriment in depreciation of the value of preference right leases.

Affirmed.

DAVISON, C.J., and GIBSON, LUTTRELL, HALLEY, JOHNSON, and O'NEAL, JJ., concur. WELCH and CORN, JJ., dissent.